# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EMMY JILL SCHMID, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-24-024-JAR |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) |

### OPINION AND ORDER

Plaintiff Emmy Jill Schmid (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42

U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias,

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

933 F.2d at 800-01.

## Claimant's Background

Claimant was 61 years old at the time of the ALJ's decision. Claimant completed her high school education and some college education. Claimant previously worked as a medical records clerk and receptionist. Claimant alleges an inability to work beginning June 1, 2014 due to limitations resulting from chronic depression, irregular hormonal cycles, anemia, anxiety, stress, high blood pressure, fibromyalgia, hypothyroidism, hyperthyroidism, joint pain, arthritis in the hands and knees, vision loss, restless legs, night terrors, bilateral knee replacement, soft tissue back pain, heart palpitations, sleep apnea, post-traumatic stress disorder ("PTSD"), urinary incontinence, memory loss, and high cholesterol.

## Procedural History

On September 1, 2021, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 22, 2023, Administrative Law Judge ("ALJ") James L. Bentley held a telephonic hearing in this case. Thereafter, the ALJ issued an unfavorable decision on August 1, 2023. On November 21, 2023, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that,

while Claimant suffered from a severe impairments, she retained the residual functional capacity ("RFC") to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ erred in (1) failing to adequately explain how he reached conclusions regarding Claimant's limitations caused by her morbid obesity; and (2) failing to consider the potential entitlement to a closed period of disability.

## Consideration of Claimant's Obesity

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, hypertension, status post right knee replacement, hypothyroidism, anxiety disorder, and depressive disorder. (Tr. 12). The ALJ found none of Claimant's alleged conditions met a listing. (Tr. 13-16). In consideration of her impairments, the ALJ determined that Claimant retained the RFC to perform a light work, except that she was limited to occasional climbing of stairs and ramps and was unable to climb ladders and scaffolding; was limited to occasional balancing, stooping, kneeling, crouching and crawling and must avoid unprotected heights and dangerous moving machinery and avoid concentrated exposure to dusts, fumes, odors, and poorly ventilated areas; avoid concentrated exposure to temperature extremes. Mentally, Claimant was found to be able to understand, remember, and apply simple, detailed and some complex instructions, make work related decisions and concentrate and persist for extended periods in order to complete simple, detailed and some complex work tasks with routine supervision. Claimant was found to be able to interact with and respond appropriately to others in a routine work setting

and was able to adapt to a routine work setting where changes are infrequent, well explained and introduced gradually and was able to recognize and ovoid normal workplace hazards.  (Tr. 16).  After consultation with a vocational expert, the ALJ found at step five that Claimant could perform the representative jobs of Office Helper, Vehicle Sales Attendant, and Marker, all of which were found to exist in sufficient numbers in the national economy.  (Tr. 22-23).  Consequently, the ALJ concluded that Claimant had not been under a disability from June 1, 2014 through June 30, 2016, the date last insured.  (Tr. 23).

Claimant first contends that the ALJ failed to explain the impact her obesity had upon the functional limitations set forth in the RFC.  At the time of the filing of her application for benefits, Claimant was five feet, three inches tall and weighed 300 pounds.  (Tr. 215).  Claimant's BMI (Body Mass Index) ranged from 53.52 to 61.13 during the relevant period.  (Tr. 343, 731).  At the outset, the ALJ stated that, "the undersigned . . . considered all of claimant's medical determinable impairments, . . . ."  (Tr. 13).  The ALJ determined Claimant's obesity, in light of her BMI, constituted a severe impairment at step two.  (Tr. 12).  He did not find that the condition met a listing.  (Tr. 14).  The ALJ acknowledged Claimant's testimony from the administrative hearing that she had BMI issues, fibromyalgia, bilateral knee problems with a left knee replacement in 2015, and the use of Lasik in May of 2016 due to fluid through the legs.  She stated that she used a cane and went to physical therapy, noting that she needed a right knee replacement.  (Tr. 17).  Claimant stated it took two years of recovery from her past knee replacement surgery and three months of physical therapy.  She stated she had to get her weight down before further

surgeries. She noted that she could not stand in one place, walk, or exercise due to pain in her back, knees, and legs. (Tr. 18).

The ALJ found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical record. Id. He noted that evidence predating the alleged onset date indicated "successful interventions to the bilateral knees that allowed her to continue to work until the alleged onset date of June 1, 2014." Id. Ultrasound revealed thyroid problems, right knee osteoarthritis involving the knee joint space, chondromalacia patella, and joint effusion. "Other than obesity", the remainder of the examination was normal. Id.

In November of 2015, Claimant underwent right knee replacement surgery with "good results." Again, the ALJ noted "[a]side from obesity (307 pounds with BMI of 53.52), the rest of the exam remained within normal limits." (Tr. 19). Claimant was seen in May of 2016 with complaints of leg swelling. However, it was noted that Claimant had been engaged in work that required prolonged sitting which was a contributing factor in a 30 pound weight gain and 3+ dependent edema to the bilateral knees. Id. The ALJ also found inconsistencies in Claimant's testimony. She testified to using a cane and walker through the course of treatment prior to the date last insured but the medical evidence did not support her use of assistive devices during visits. The ALJ found motor strength was essentially normal with no significant neurological deficits with no loss of balance or risk of falls and normal gait. The ALJ concluded that the assistive devices were not medically necessary. He found that "given the claimant's symptoms . . . during

the physical examinations supporting a history and complaints with obesity with weight gain and edema, . . . the undersigned finds the light residual functional capacity . . . appropriate." (Tr. 19-20). The ALJ recited the functional limitations in activities reflected in the RFC. (Tr. 20). The ALJ concluded his consideration of the state agency consultants, "in light of the evidence prior to the date last insured supporting objective findings documented in the medical evidence of record to include obesity . . . ," the ALJ found the evidence to be more persuasive than the limitations found by the state agency consultants. (Tr. 21).

Social Security Ruling 19-2p requires an ALJ consider that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" when assessing the RFC. Soc. Sec. R. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)." Id. at *2. Each case is evaluated based on the information in the record, resulting in "an individualized assessment of the effect of obesity on a person's functioning[.]" Id. at *2, *4. "[G]eneral assumptions about the severity or functional effects of obesity combined with [other] impairments" will not be made. Id. at *4.

However, Claimant points to no evidence of further functional limitation brought about by her obesity. She engages in speculation and appeals to the Court's "common sense" in finding limitations – "Claimant is obese therefore there must be limitations"; but the medical evidence does not bear out any additional limitations. Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015)(" Ms. Rose points to no medical evidence indicating that her obesity resulted in functional

limitations."). This Court will take the ALJ at his word that obesity evidence was considered when he states "all of the claimant's medically determinable impairments" were evaluated in arriving at the RFC. Further, the decision is replete with considerations of Claimant's obesity as a limiting condition. This Court finds no error in the consideration of Claimant's obesity impairment.

### Consideration of a Closed Period of Disability

Claimant also asserts that the ALJ should have considered a closed period of disability from July of 2014 until November of 2015, when she underwent knee surgery. The Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinatlble physical ormental impairmten which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ concluded that Claimant was not disabled for any continuous 12 month period between the alleged onset date of June 1, 2014 and the date last insured, June 30, 2016. (Tr. 23).

Claimant specifically stated in the initiating paperwork that she was not seeking benefits for a closed period. (Tr. 202). Claimant had the opportunity to have the ALJ consider such a request at the hearing and failed to do so. While it is unclear whether a claimant may waive an argument not brought before the ALJ, this Court will not encourage this type of "bait and switch" activity which permits abandoned or not urged arguments to trigger a remand. Moreover, by not finding Claimant to be disabled for any continuous 12 month period, the ALJ has essentially

8

determined Claimant was not disabled for the closed period she now urges. No error is found in the ALJ's failure to consider an argument not brought before him.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 31st day of March, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE